```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ALABAMA
                            SOUTHERN DIVISION
```

FILED
00 AUG 23 AM 11:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

KENNETH EDWARD GILES,           )
                                )
        Plaintiff,              )
                                )
v.                              )      Case No. CV-98-TMP-2367-S
                                )
THE CITY OF BIRMINGHAM, et al., )      ENTERED
                                )
        Defendants.             )      AUG 23 2000

## MEMORANDUM OPINION

This action is before the court on the motion for summary judgment filed by the defendants, the City of Birmingham and Christopher Mitchell, on March 6, 2000. The parties have consented by stipulation to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c). The motion has been fully briefed, and the court has considered all of the pleadings, arguments, deposition testimony and affidavits in the file.

### I. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of



informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

2

essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873

3

F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. FACTS

Viewing the evidence in the light most favorable to the plaintiff, the following facts are relevant to the defendants' motion for summary judgment:

On September 3, 1997, the Birmingham Police Department received an emergency call reporting domestic violence. The call was made by Felicia Hives, who reported that she had been attacked by her boyfriend. In response, Officer Christopher Mitchell was dispatched to the address given by the caller, 3908 36th Avenue North in Birmingham. Mitchell arrived at the home and knocked on the front

door. He was met by the plaintiff, Kenneth Giles. Mitchell believed that a crime was being committed in the home. Giles told Mitchell that Hives was in the back yard, and told him to go around the outside of the house to reach the yard. Instead, Mitchell entered the front door and went through the house to the back door, where he saw Hives. She entered the house and told Mitchell that she had told Giles to move over in bed and that he had become angry and had hit her with his fist. Mitchell saw red marks and scratches on Hives. Hives said the marks were caused by Giles.

Mitchell placed Giles under arrest and took him to the Birmingham City Jail. Upon leaving the residence, Mitchell locked the door. Approximately twelve hours later,[1] Giles posted bond and was released. A restraining order was issued against Giles, ordering him to stay away from Hives. In his deposition, Giles admits that he and Hives had an intimate relationship at the time of the call, and that he was not surprised that she had called the police to report that he had hit her.

Giles' domestic assault charge was set for trial in municipal court and was continued four times. It is not clear how the matter

---

[1] Although the defendant concedes that Giles has stated that he was incarcerated for up to 48 hours, Giles' complaint asserts that he was jailed for only 12 hours, and he answered in deposition that he was in jail for 12 hours. In addition, the order releasing Giles from jail is dated September 3, 1997, the same date that he was arrested, further evidencing that Giles' incarceration lasted less than 24 hours.

was resolved, but it appears that the charge was dismissed in January of 1998.

About three months before his arrest, Giles entered into a contract with Olshan Mortgage Company to rent with an option to buy a home located at 3513 42nd Avenue North in Birmingham. Apparently, Giles agreed to make repairs that would be required to prevent the city from demolishing the condemned home. On June 6, 1997, the city issued a condemnation repair permit for the property. That permit required that Giles perform certain repair work on the house, and stated that the permit would be voided unless:

> (a) Structure secured and the weeds and trash removed from the premises within ten (10) days of permit issuance.
> (b) An inspection MUST be called for every thirty (30) days.
> (c) This permit will be VOIDED if substantial repairs are not completed and vertified [sic] by the Inspector within thirty (30) days of permit issuance.

On October 8, 1997, the permit was voided because the city determined that the repair requirements had not been met.

On September 21, 1998, the plaintiff filed a *pro se* complaint commencing this action. Pursuant to 42 U.S.C. § 1983, Giles asserts that the defendants violated his civil rights by (1) making a warrantless search of the 36th Avenue home, (2) arresting him on September 3, 1997, without first obtaining a warrant, (3) causing him to lose his property interest in the 42nd Avenue home because

6

his arrest rendered him unable to comply with his obligation to make repairs to the property,[2] (4) denying him a speedy trial by continuing the matter for several months, and (5) denying him effective assistance of counsel by refusing to appoint an attorney to defend him his right to a speedy trial.[3]

### III. DISCUSSION

The defendants seek summary adjudication of all of plaintiff's claims on the basis that the search of Giles' home and his subsequent arrest did not violate the plaintiff's Fourth Amendment rights. Because the arrest was lawful, defendants then argue, any resulting loss of property does not present a cognizable claim.

---

[2] Although Giles does not specifically make the claim in his complaint, he asserts in other pleadings that personal property, including a television and video cassette recorder were lost as a result of the arrest. Presumably, Giles asserts that during his absence from home caused by the arrest, someone stole or damaged the property inside the home. He asserts, then, that such losses are damages arising from a wrongful arrest. However, to the extent that such a claim is set forth in the pleadings, it must fail because neither the city nor Mitchell engaged in any wrongful conduct as to Giles and Mitchell has testified that he locked the door to the home, thereby exercising reasonable caution to protect the home's contents.

[3] The issues set forth herein as claims four and five will not be addressed because they are not proper matters to be raised in a § 1983 action. If plaintiff was never convicted, plaintiff has suffered no cognizable injury. On the other hand, if plaintiff was convicted he must address these claims by seeking habeas relief. Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

A.  Warrantless Search and Arrest

In this case, Mitchell entered Giles home without permission and without a warrant. Giles first premises his claim upon a contention that the "search" of his home by Mitchell was unconstitutional because Mitchell failed to obtain a warrant. While it is true that the Fourth Amendment proscribes all unreasonable searches, it is well settled that the prohibition against warrantless searches is subject to a few exceptions. There is one exception that applied in the instant case, and that exception allows police to enter a home without a warrant when they are arriving on the scene of an emergency and "reasonably believe that a person within is in need of immediate aid." Mincey v. Arizona, 437 U.S. 384, 392, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978).

In this case, the police received an emergency call from a woman who reported that she was a victim of an ongoing incident of domestic violence. Upon arriving at the scene, the officer found a man, but could not locate the victim from the doorway of the home. Mitchell testified that he has been trained that domestic violence crimes are often the most dangerous calls to which officers must respond. It is clear, based on the undisputed facts, that Mitchell was responding to an emergency call and had a reasonable belief that Hives was inside the home in need of immediate assistance. Consequently, the warrantless search of Giles' residence falls

8

within the narrow exception to the prohibition against warrantless searches.

Giles further argues that his arrest was without probable cause. This argument also is unavailing. Alabama law permits law enforcement officers to arrest a suspect without a warrant when "an offense involves domestic violence as defined by this section, and the arrest is based on probable cause, regardless of whether the offense is a felony or misdemeanor." Ala. Code § 15-10-3(a)(8). A "domestic violence" offense includes one committed within a dating relationship. Id. at (b)(4).

Giles admits that he had such a relationship with Hives at the time of his arrest. It is also undisputed that Hives reported to the police that she was being beaten by her boyfriend. Once Mitchell observed the red marks on Hives and she had identified Giles as her attacker, Mitchell had probable cause, sufficient under both state and federal law, to arrest Giles.[4]

The foregoing facts demonstrate that Mitchell responded to an emergency call reporting domestic violence, and made a permissible warrantless search to find the victim, followed by an arrest based on probable cause in accordance with state law and within the bounds of the Fourth Amendment. Because the plaintiff has failed to come

---

[4] Even if the arrest were deemed not to be constitutional, for purposes of qualified immunity, Mitchell cannot be deemed to have acted "contrary to clearly established federal law."

9

forward with sufficient evidence to support his claim that the defendants violated his civil rights by searching his home or arresting him without a warrant, the defendants' motion for summary judgment on these claims is due to be granted.

### B.  Loss of Property

As discussed *supra*, the plaintiff has failed to show that the defendants engaged in any wrongful conduct with respect to his arrest.  All of the property loss Giles complains of, however, allegedly arises from that arrest.  In short, Giles claims that personal property was damaged because he was taken to jail while his household property was left untended for several hours, and he claims that his interest in the real property at 42nd Avenue was lost because his arrest left him so "stressed out" that he was unable to make the required repairs.[5]  Even if these allegations were true, they would fail to state a cognizable claim.  In the absence of any wrongdoing, these defendants cannot be liable for the damages allegedly suffered by Giles.  For this simple reason, the defendants' motion for summary judgment based on his claims of property loss is due to be granted.

---

[5] The court notes that pursuant to the terms of the permit, the repairs were due to be completed within thirty days, which expired before Giles was arrested. Consequently, even though the permit was not voided until October, the time for making the repairs had elapsed before he was arrested in September.

### IV.  CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the motion summary judgment, this court determines that defendants' motion for summary judgment against plaintiff is due to be GRANTED and plaintiff's claims are due to be DISMISSED with prejudice.

A separate order will be entered in accordance with the findings set forth herein.

Dated the 22nd day of August, 2000.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

11